Chancellor Mathews
delivered the decree of the court?
These cases having been heard together must be decreed accordingly.
There are three points for the consideration of the court.
1st. Whether the legacy to Dr. Stuart is liable for the-payment of any pai’t of the debts of the testator?
2d. Whether the legacy to- Mrs. Carson, the wife is-jn iike manner liable ?
3d. Whether the residuary estate, both real and personal, given in the first instance to Eliza G. Carson, ia equally liable for the payment of such debts as the fund; appointed for that purpose was incompetent to discharge? Or whether the personal estate alone is first liable ?
It having been conceded by the defendants counsel on his behalf, that the legacy to Dr. Stuart could not be charged, it is unnecessary for us to comment on the first point.
As to the second point, wé cannot hesitate a moment on the propriety of placing this part of the case on the same footing as that of Mrs. Loocock, in the case of Loocock and Clarkson. Indeed the case before us has a preferable claim to a similar decision; as this legacy is all that is given to the wife, out of a large estate; whereas in the case of Mrs. Loocock, there were several other parts of her husband’s estates given to her by his will> either absolutely or for life, independent of the annuity. And further, in the present case, the legacy to the wife is not only in lieu and satisfaction of dowei’, but of any <c claim by virtue of any deed, or by any other way or means whatever.” It is unnecessary for us to dilate on this point, as we gave our reasons so fully in the case of Loocock and Clarkson, and so recently as the last term. It is sufficient at present to say that the legacy to- Mrs, Carson being in the nature of a fair purchase, cannot be charged with the payment of any part of the debts of the testator. There are however two other questions which arise out of this point, viz. whether on the death of Mrs. Carson intestate, her legacy, never having been reduced into possession, did not then become liable for its propor- *511 xlon of the debts: or, if not liable, whether the share of E. G. Carson, the daughter of the testator, being an un-incumbered part of the estate which came to her, ought not first to be applied towards her maintenance and education ? As to the legacy of Mrs. Carson never having been reduced into possession, we cannot admit this to ■have been the fact; because her being an executrix and residing on the plantation where the negroes were, and ■as the law authorises an executor to take his own legacy, without the formality of a delivery, as in the case of a legatee only, we must consider this as such an actual possession as would vest the legacy in her, and consequently would descend to her representatives, who were her two children, Dr. Stuart and E. G. Carson; and on the death •of the latter intestate, vested wholly in Dr. Stuart, her surviving brother of the half blood. And as to the share ■of E. G. Carson being applied towards her maintenance and education during her life, we can by no means think ■this either a legal or a reasonable demand; because such ■never could have been the intention of the testator, as he left her a very large portion of his estate, the income of which we might fairly presume was more than adequate to those purposes. As the testator then never contemplated this contingency as a possible fund, out óf which his daughter was to receive any part of her support, and as that part of her father’s estate, (except what is given to her uncle) will in consequence of her death go to strangers to her blood; we think it but reasonable that this inconsiderable part of the estate which she had the power of disposing of, ought to go to the person nearest in blood to her; and to whom in all probability she would have given it had she made a will; that is, to her brother, Dr. James Stuart. TVe think therefore it ought not to be charged with the incumbrances which have been contended for.
As to the third point, a doctrine altogether novel, has been attempted to be maintained at the bar. Having taken a view of the consequences which resulted from the feudal tenures in England, the counsel have analogically reasoned, that the abolition of the rights of primogeniture *512 in this country ought to induce this court to direct its da cisions on the same principies which governed the courts in their decisions in that country under similar ciicnm-stances. We cannot think the comparison a well founded one> as there is not that striking analogy which can render it so. For although the courts in that country had in a great degree got rid of the feudal tenures, yet there still remained considerable harriers to protect real estate agajnst the claims of creditors; and it was only in cases where the occupant of the real estate had by deed expressly bound the heir, that the creditor could have any lien on the land; and not even then in many instances, as the personal estate was commonly made the fund for payment of debts, in exoneration of the real estate, although hound by the act of the occupant. Courts of equity first broke through this barrier for the relief of creditors by marshalling assets, thereby subjecting the real estate to the payment of simple contract debts, when the heir had the benefit of the personal estate for the payment of the bond debts. The English courts-have also since the above period examined with a strict eye the wills of persons; and in every case where they could lay hold of such words as could be construed into a strong presumption of the testator’s intention to charge his real estate with payment of debts or legacies, they have earned such intention into effect in all cases where creditors were concerned, who are always favored by a court of equity. In cases where real estates have been expressly charged, they have been made to contribute as a matter of course. Thus it appears to have been a struggle between the courts and the heir at law in that country; the one to bring the real estate within the reach of creditors, and the other to cover it against their claims. The rule there respecting the marshalling of assets has also been made the practice in this country; but with regard to every other matter in the payment of debts, the laws of this state have so expressly charged the real estate with the payment of every species of debt, that the courts of justice have never been driven to the necessity of exercising their ingenuity fo find out words in a will which they *513 Slight construe into a charge on the real estate, for pay-meat of debts. As to the act of this state abolishing the rights of primogeniture, that merely relates to cases ©f intestacy; and consequently has left the laws for ilm administration of the assets of estates just whw e they were. It would therefore be too bold an undertaking for this court to level the laws and practice, of this country, that have heretofore obtained in the mode of payment of debts, to what might be conceived to be tine principle of that law; namely, to place real and personal estates precisely on the same level in all cases. We do not conceive this to have been the spirit of that law. To be sure in cases where the law is silent, or doubtful, we must be governed by principle; but we are not reduced to this dilemma in the case before us; because although the law on which we are now commenting Is silent as to this matter, yet there were and still are existing laws to direct us in our decisions. From the view we have thus taken of the circumstances which have followed from the riddance in a great measure of feudal tenures in England which hound their real estates, and of the laws and practice of this country, we think there is very little if any analogy between them. We shall now return to the will by which our decisions must be governed. The clause directing the payment of the debts of the testator is in these words: “ I direct my executrix and executors to sell my tract of land on Lady’s Island, containing 1500 acres, known by the name of St. Quintins, for the payment of my just debts and funeral expenses; hut should the said tract of land prove insufficient for the purpose of paying them, the remainder of my debts to be paid out of the rest of my estate not specially devised hereafter.” It has been contended by the counsel on the part of the defendant, that this is such a charge on the testator’s whole estate, real as well as personal, as ought to make them equally liable for payment of such debts, as the fund appropriated for that purpose was inadequate to satisfy. There are many instances in vihich persons in making their wills, do not come up fully to the objects they have in view, which renders the interference of this *514 court necessary to supply those defects. This appears to us to be one of those cases; for by charging his estate generally with payment of his debts, the testator has cai,sed such a clashing in the interests of the legatees of his will, as has rendered it necessary for them to call or this court to say out of what part of his estate his debts are to be paid. This we think will be made sufficiently clear by comparing the last mentioned clause of the will with the clauses which dispose of his estate, real and personal, in the event of the death of his daughter before her arrival at either of the periods limited for her taking the estate intended for her. The material words in the first clause are, “ the remainder of my debts to be paid out of my estate not specifically devised hereafter.” The words of the clause which are afterwards made use of in the disposition of the real estate are “ I give, devise and bequeath all my real estate not before specifically devised, to my brother, William Carson, his heirs and assigns for ever.” It appears then to have been the testator’s intention to charge that part of his estate with payment of his debts, which was not afterwards specifically devised; the after devise of all his real estate to his brother, William Carson, is such a specific devise as must exempt it from such a charge; consequently the residue of testator’s debts, must be paid out of such part of his estate, as is not specifically devised. But as the whole of his real estate is specifically devised, the debts must he paid out of such of the personal estate as remains, after assignment of the legacies to Dr. Stuart in his own right and in right of Ms mother and sister; but if such remainder should prove insufficient for the purpose, then the balance must be paid out of the specific devise of the real estate to Williara Carson.
It is therefore decreed that the legacy to Dr. Stuart be forthwith delivered to him. That commissioners he appointed to divide the negroes of the testator’s estate into three equal parts; and that one of those shares he assigned to Dr. Stuart, in right of his mother, and another in right of his sister. That he be allowed at the rate of 10Í. per annum for every working hand which he became *515 entitled to in right of his mother, and the like sum for those he inherited in right of his sister, unto the time of their delivery to him. That he be allowed the amount of the one half of the sales of the plate and the furniture, and the full amount of the sales of the carriages and horses, with interest from the time of the sale until paid. As to the residue of the personal estate which the several claimants might be entitled to after payment of the debts, we will reserve our opinion, until the debts are satisfied, as it has been represented that the whole of this part of the personal estate will be inadequate to that purpose. And as all the parties are actors in these suits, that each do pay his own costs.

 injunction was accordingly granted.